HENRY WILSON AND WIFE vs. ANDREW J. PECK AND OTHERS.

The owner in fee of certain land in 1798 executed a deed of it in the following words: "For the consideration of the love, good-will and affection I have for my brothers and sisters by nature and marriage, and their children by nature and marriage, I do give, grant, bargain, sell and confirm unto my said brothers and sisters by nature and marriage, and their children by nature and marriage, one certain piece of land, * * * the grantees to be at the expense of repairing and making the fence around said burying ground, containing about a rood of land, to be to the persons above mentioned for the sole use of a burying ground, and no other purpose, and not to be by them disposed of, reserving the right to me, my heirs and assigns, to bury there, also to pasture there with anything but swine, but not to do any damage to the graves. To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto them, my said brothers and sisters, and their heirs forever, to them and their own proper use and behoof."

From the date of the deed the premises had been used and occupied by the grantor and his heirs, and the grantees and their heirs, exclusively as a burial ground, and the remains of the grantor and his wife and five others lay buried there. The petitioners had by conveyance from a devisee of the grantor the right of pasturage reserved to the grantor in the deed, and claimed title in fee to three undivided fourths of the premises by conveyances from children and heirs at law of the grantor.

Upon a petition under the statute of 1866, chapter 43, against other heirs at law of the grantor, praying for a sale of the land, Held—1. That the deed was valid, and conveyed to the grantees the fee of the land, and not a mere easement or right of burial. 2. That, although the terms of the statute might be broad enough to bring the case within the jurisdiction of the court, with power to order a sale, under the circumstances of the case such an order would involve an exercise of judicial power wholly unwarranted. 3. That, even if the petitioners were the owners in fee of an undivided part of the premises, subject to a right of burial in the respondents, it was not the intention of the legislature that in such case a sale should be ordered against the consent of

parties interested, and that such right of burial was further protected by the spirit and purpose of the statute of 1702, which guarantees protection to lands granted to public and charitable uses.

The only mode of review by this court of the proceedings of a court of equity is by motion in error, or writ of error.

PETITION by tenants in common of certain land against heir co-tenants, praying for a sale of the land; brought to the Court of Common Pleas, and heard before *Brewster, J.* The Court of Common Pleas dismissed the petition, and the petitioners moved for a new trial.

Prior to and on the 29th of March, 1798, Israel Peck, Senior, of Greenwich, was seized in fee of the land in question, and on that day he executed and delivered a certain deed or writing, of which the material parts are as follows:

" To all people to whom these presents shall come, Greeting:

KNOW YE, That I, Israel Peck, of Greenwich, in the county of Fairfield, and state of Connecticut, for the consideration of the love, good will and affection I have for my brothers and sisters by nature and marriage, and their children by nature and marriage, do give, grant, bargain, sell and confirm unto my said brothers and sisters by nature and marriage, and their children by nature and marriage, one certain piece of land in said Greenwich." (Here follows a description of the land.) " The grantees to be at the expense of repairing and making the fence around said burying ground, containing about a rood of land, bounded westerly by the road, northerly by my own land, easterly by my own land, and southerly by land set to Abraham Peck, to be to the persons above mentioned for the sole use of a burying ground, and no other purpose, and not to be by them disposed of, reserving the right to me, my heirs and assigns, to bury there, also to pasture there with anything but swine, but not to do any damage to the graves.

To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto them, my said brothers and sisters, and their heirs forever, to them and their own proper use and behoof."

Israel Peck, Senior, died in 1819, leaving a last will and

testament, by which he gave to his son, Israel Peck, "the privilege right of pasturing or mowing the burying ground."

Israel Peck, Senior, left the following heirs at law, viz: Israel Peck, Jr., Nehemiah. Peck, Rachel Peck and Levina Brown, sons and daughters of Israel Peck, Senior, and said Rachel and Levina, on the second of May, 1870, deeded all their interest in the premises in question to Israel Peck, Jr., and on the 21st of September, 1867, Israel Peck, Jr., conveyed by deed of that date to Charles L. Huber the premises in question, excepting therefrom the burying ground, and on the same day Huber, by deed of that date, conveyed to the petitioner, Eliza G. Wilson, all his right, title and interest in and to said land, and on or about the 19th of September, 1870, Israel Peck, by deed of that date, conveyed to the petitioner, Eliza G. Wilson, all his right, title and interest in and to the premises.

On the 29th of March, 1798, Israel Peck, Senior, had eight lawful brothers and sisters living, all since deceased, viz: Benjamin, Isaac, Theophilus, Sarah, Eunice, Ruth, Rachel and Hannah Peck, all capable of taking as grantees. Samuel Peck, a brother of Israel Peck, Senior, died shortly before the execution of the deed from Israel Peck, Senior, above described, and had just been buried in the land in question by consent of the grantor, and at the time of the execution of said deed, the land had been appropriated to the purpose of a burial ground, and has been used and occupied exclusively for that purpose by the grantor and his heirs, and by the grantees and their heirs, from that date until the year 1865, when the last burial was made therein, and the remains of Israel Peck, Senior, and his wife are still lying in the burial ground, with five others, while four bodies have been removed therefrom.

Several of the heirs, and legal representatives of the heirs, of Israel Peck, Senior, object to the sale of the burial ground, and the removal of the bodies of their ancestors and relations from it, while about an equal number of said heirs and representatives are indifferent to, or desirous of, such sale and removal. Some of the head stones marking the graves have

fallen down, and the ground is not likely to be used by any of the heirs of Israel Peck, Senior, or of the heirs of his brothers or sisters, as a burial place for further interments; but the stone fence around it is in ordinary repair, and the appearance of the lot but little changed, except by the growth of a few apple trees, since its appropriation to burial uses in 1798.

In connection with the deed of 1798, and to show the construction put upon it by the parties and those holding under them, the petitioners offered evidence to prove, and claimed to have proved, (there being no evidence to the contrary,) that Israel Peck, Jr., during his father's life, by direction of his father, took all the care of the burial ground that was taken of it, and continued such care after his father's death until his sale of the adjoining premises, on the 21st of September, 1867, to Huber; that he grafted two or three apple trees which had spontaneously grown upon the land, and cut one of the trees which had grown thereon, and for many years took the fruit of the apple trees; that some years before the purchase by the petitioners, he built a new stone fence around the grounds, and the land being very wet, he made a deep drain on two sides of it to drain it. He once gave permission to a person not a member of the family to bury a child there, and always claimed the right to take the fruit and pasturage and grass from the burial ground, and all his said acts were done under a claim and belief of right so to do, which claim and belief were not questioned, nor his acts objected to by any one. No acts of ownership have ever been exercised by the grantees in the deed of 1798, or any one holding under them, except the burial of some members of their families there; and they have never fenced or taken any care of the grounds, or contributed to the expense thereof, or been requested so to do. And the court found as a matter of fact, that, leaving out of account the feelings of the respondents, and other descendants of the grantees under the deed of 1798, and their expressed desire and solicitude that the bodies of their ancestors and relatives should not be disturbed, nor their last resting place sold and converted to other than burial purposes, a

sale would on the whole better promote the material or pecuniary interest of the parties in interest. All the near relations of two of the persons whose bodies are now buried in the burial ground object to and oppose their removal.

The petitioners claimed on the facts and writings above set forth, and requested the court to rule as matter of law: **1.** That they had acquired by deed from the representatives of the grantor the right of pasture and of burial in and upon the premises. **2.** That the deed of 1798 was void for uncertainty, and by the other deeds and writings the petitioners became owners in fee of the undivided three-fourths of the land in question. **3.** That if the deed of 1798 was effectual for any purpose whatever, it only conveyed to and vested in the grantees an easement, or right of burial in the land, and that the fee, subject to such easement or right, remained in the grantor. **4.** That if the grantees acquired by the deed of 1798 any estate beyond an easement or mere right to bury, it was an estate upon condition, viz: that the grantees were to make and repair the fence around the burial ground, which condition they claimed to have proved was broken, and that the heirs of the grantor had re-entered thereon. **5.** That if, as claimed by the respondents, the petitioners had only at most a right of pasture and of burial in the burial ground, still the court on their petition might lawfully order, and they claimed as a matter of right should order, the sale of the premises, if such sale should be found for the common interest of the parties. **6.** That there was no such license given by the deed of Israel Peck, Senior, to his brothers and sisters, and their heirs, and their action under it, nor such an appropriation or dedication of the land for burial purposes, that the license was now irrevocable, or the appropriation or dedication of such a nature as to prevent the sale of the property, if it was not needed for further burials.

Upon these facts and claims the court held and ruled as matter of law: **1.** That the deed of Israel Peck, Senior, of March 29th, 1798, conveyed to the grantees therein named something more than an easement, and that so long as they

used the land therein conveyed as a burial ground, they had a complete title to the fee of the land under the deed.

2. That the acts of Israel Peck, Jr., and the facts aforesaid, did not show an entry for condition broken, or such a user by the grantor in the deed of 1798, or his heirs, as was inconsistent with the rights of the grantees under the deed, and the court found no forfeiture thereof.

3. That under the allegations of the petition, proof of an easement in the petitioners, or right to bury and pasture, would not under the statute authorize a sale of the burial ground.

4. And that on the facts aforesaid the court had no right, while the bodies remained in the burial ground, to decree a sale of the ground, after the grant, appropriation and dedication aforesaid, and against the wishes of the respondents.

*Woodward* and *Hoyt*, in support of the motion, cited *Munson* v. *Munson*, 30 Conn., 436 ; *Meeker* v. *Meeker*, 16 id., 403, 407 ; *Wright* v. *Pond*, 10 id., 256, 261 ; *Manning* v. *Smith*, 6 id., 289, 292 ; *Griswold* v. *Allen*, 22 id., 89, 98, 99 ; *Bryan* v. *Bradley*, 16 id., 474, 482, 483 ; *Brown* v. *Slater*, id., 192, 196 ; *Scofield* v. *Lockwood*, 35 id., 425, 428 ; *Edwards* v. *Stonington Cemetery Association*, 20 id., 478 ; *Chatham* v. *Brainerd*, 11 id., 60 ; *Richardson* v. *Monson*, 23 id., 94 ; *Scovil* v. *Kennedy*, 14 id., 349 ; 1 Swift Dig., 122 ; 2 Bouv. Law Dict. (Ed. 1868), 205, "Natural Children." *Thelusson* v. *Woodford*, 4 Ves., 336 ; 1 Washb. Real Prop. (Ed. 1862), 52, 54 ; *Blackstone Bank* v. *Davis*, 21 Pick., 42 ; *Adams v. Emerson*, 6 id., 57 ; 1 Story Eq. Jur., 646 *et seq.* Willard Eq. Jur., 699, 705.

*Curtis* and *Olmstead*, contra.

SEYMOUR, J. The petitioners brought their petition to the Court of Common Pleas, asking the court to order the sale of certain premises containing about a rood of land, situate in Greenwich. They aver that, subject to certain incumbrances, Mrs. Wilson is the owner in fee of three-fourths of the prem-

ises, and that Andrew J. Peck is the owner in fee of the other fourth. They base their petition on such title, and on the statutes authorizing the courts to order the sale of real estate owned by several, upon the application of any of the persons interested therein. The Court of Common Pleas made a finding of facts, and dismissed the petition, and the case comes before us for review by motion for a new trial.

We think that there are several satisfactory grounds for affirming the decree of the Court of Common Pleas.

First, the title is not at all as the petitioners aver it to be. The title depends upon the validity and construction of the deed of Israel Peck, Senior, of March 29th, 1798. This deed is recited at length in the finding, and if it is invalid, as the petitioners claim it to be, then indeed the title is as stated in the bill; but if that deed is valid, and conveys the fee to the grantees, then Mrs. Wilson has no such title as that set forth in the bill, and made the ground of the relief sought.

The deed is in several particulars informal and defective, but we think it is nevertheless valid, and conveyed the fee of the premises from Israel Peck to his brothers and sisters. The habendum is in the usual form of conveying the fee, " to his brothers and sisters and their heirs forever, to them and their own proper use and behoof." The word " assigns" was probably omitted by design, for it is apparent that the grantor intended that the property should be unalienable in his brothers and sisters and their descendants, and that it should ever remain as a family burying ground, and he undoubtedly intended that the fee should pass from generation to generation of the Peck family, for the purpose of carrying out his purpose of creating a lasting family cemetery.

The argument of the petitioners is that the restriction of the use of the land, and the restraint upon its alienation, are inconsistent with an estate in fee simple, and that therefore such estate did not pass by the deed. Such restraints are certainly, as a general rule, inconsistent with the idea of a tenure in fee, and in general the restraining clauses are inoperative, where there are controlling words that pass the fee.

But we are not prepared to say that, in a conveyance of land for the purpose of a burying ground, such restraints may not be valid. It must be admitted, however, that where the fee is conveyed there are difficulties in the way of enforcing the application of the land to the intended use, if the grantee chooses to appropriate it to a different purpose. But that question does not arise in the case now under our consideration. The grantees under the deed are content to carry out the intentions of the grantor. *They* do not seek to sell the premises, nor to appropriate them to any other use than that contemplated by the deed. Parties claiming title under the grantor, and standing in his place, are here seeking to treat the deed as void, and to cause to be disinterred the bodies of those buried in the ground, and to devote the land to purposes other than for burial. From the date of the deed, 1798, down to the present time, the premises have been used, occupied and possessed under the deed, and according to its provisions. We have no hesitation in pronouncing the deed valid, and in holding that the fee passed to the grantees.

The petitioners also insisted in argument, that if the deed was not void, still it conveyed to the grantees only a right of burial as an incorporeal right, the fee remaining in the grantor. But the words of the habendum seem to us to be controlling words to carry the fee; and besides, the grantor reserves to himself and his heirs and assigns a right of burial in the premises, and a restricted right of pasture, which reservations are inconsistent with the idea of his retaining the fee in himself.

But the petitioners say, that, even if they have not the title set up in the bill, yet it appears that Mrs. Wilson has an interest in the premises, to wit, the right of pasturage and mowing which the grantor reserved to himself and his heirs, and the petitioners say that under the statutes on this subject such an interest authorizes them to demand a sale of the entire property, and the idea is, that by means of such a sale the right of burial and the right of having the bodies already interred remain on the premises will be destroyed, and the purchaser take an absolute and unlimited right in fee simple.

The statute of 1866, chapter 43, seems to be broad enough in its terms to bring the case as thus presented within the jurisdiction of the court, with power to order the sale, for although parties have distinct and different interests in land, yet by that statute one party may compel the other to submit to a sale. Such an order involves an extraordinary exercise of judicial power, and in this case it would involve an exercise or power wholly unwarranted. The grantees under Israel Peck's deed are owners in fee of a burying ground, which they are using as such, and wish to continue to use as such, and the petitioners, as part owners of a right to pasture the same grounds, insist upon the sale of the premises, whereby these grantees without their consent may be deprived of all legal interest in the burial place of tneir ancestors. Circumstances may exist of such entanglement of title as would justify the courts in ordering the sale of an interest in land without the owner's consent, but the case must be a strong one, and the case made by this petition is not in any aspect of it one that warrants the interposition of the court to order the sale asked for.

Even if the title were such as the petitioners state it to be in their bill, if Mrs. Wilson were owner of three-fourths of the ultimate fee, subject to a right of burial in the grantees and their heirs under Israel Peck's deed, we doubt much whether any court would grant an order of sale to defeat such right of burial, after the parties had acted upon that right, and desired to retain it. Such an incorporeal right is property peculiarly entitled to protection, and although the statute in terms authorizes the court to order the sale of the entire property, the legislature could never have intended that such sale should be ordered against the consent of parties interested.

The statute of 1702 guarantees protection to all lands that have been granted to public and charitable uses, and are being occupied in conformity with such use. Treating this deed as the petitioners treat it, as a mere dedication of the property to the grantor's brothers and sisters and their heirs as a place of burial, and conceding that the fee was not parted with by the deed, yet such dedication ought, we think, to be protected,

if not by the words of the statute of 1702, yet certainly by its spirit and purpose.

We are clearly of opinion that the decree of the Court of Common Pleas is not erroneous, and that no new trial be advised.

The form of the proceedings by which this case comes before us is not appropriate to the case. A motion for a new trial is adapted to proceedings at law, and not to proceedings in equity. The statute provides that courts of equity shall cause the facts on which they found their decrees to appear on the record, and gives the party aggrieved by any decree a writ of error to the Supreme Court of Errors. The only mode of review by the Supreme Court of the proceedings of a court of equity is by motion in error or writ of error.

In this opinion the other judges concurred; except CAR-PENTER, J., who was absent.